FILED
2008 Sep-10 PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| TERESA NESMITH, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 4:07-CV-1204-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I. Introduction.

The claimant, Teresa Nesmith, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB"). Ms. Nesmith timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Nesmith was thirty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, is a "younger individual," and she has a year

and a half of college, in addition to a high school education. (Doc. 7 at 3 and Tr. at 32, 576.) Her past work experience includes employment as a secretary and medical records clerk/technician. *Id.* Ms. Nesmith claims that she became disabled on June 10, 2002,[1] due to below the knee amputation and prosthesis, stomach ulcers, diverticulosis, and allergies. (Tr. at 16, 68.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements

[1]Claimant originally alleged a disability date of April 1, 1997, but at a hearing before the ALJ on May 10, 2004, Plaintiff amended her alleged onset date to June 10, 2002. (Tr. at 16.)

before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's

RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Nesmith met the nondisability requirements for a period of disability and DIB, and was insured through December 31, 2002. (Tr. at 32.) He further determined that Ms. Nesmith has not engaged in substantial gainful activity since the alleged onset of her disability. *Id.* According to the ALJ, Plaintiff's following impairments are considered severe: "asthma, well controlled, vascular headaches; allergic hypersensitivity reaction to unspecified allergies; anxiety; depression; diverticulosis, idiopathic angioedema, fatigue, and status-post left below the knee amputation." *Id.* However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id.* With respect to Plaintiff's mental impairments, the ALJ found that they: "impose no more than mild limitations upon her activities of daily living; no

more than mild limitations upon her ability to maintain social functioning; no more than mild limitations upon her ability to maintain concentration, persistence or pace; and no episodes of decompensation." *Id.* at 33. The ALJ determined that Plaintiff has the residual functional capacity to

> perform sedentary work which does not require working at unrestricted heights, does not require climbing, driving a motor vehicle, pushing/pulling with the lower extremities, stooping and squatting; which does not require walking on uneven terrain; which requires only occasional bending; which provides termperature-controlled environment; which provides no excessive exposure to dust, fumes; and gases and which provides a sit/stand option.

*Id.*

The ALJ concluded that Ms. Nesmith is incapable of performing her past relevant work as a medical records technician and equipment secretary. *Id.* However, the ALJ further noted that Plaintiff has "laterally transferable skills from her past relevant work," has more than a high school education, and is a "younger individual pursuant to 20 CFR 404.1563(c)." *Id.* Therefore, the ALJ found that, while Plaintiff cannot perform the full range of sedentary work, there are a significant number of sedentary jobs in the national economy that she could perform, such as "semiskilled or

unskilled receptionist, clerical worker, secretary, inspector, sorter, and security monitor." *Id.* Accordingly, the ALJ entered a finding that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." *Id.*

II. Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Ms. Nesmith alleges that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded for two reasons. (Doc. 7 at 10-14.) First, Plaintiff contends that "the ALJ failed to consider

her non-exertional impairments within the framework of the three-part pain standard." *Id.* at 12. Second, Plaintiff alleges that, while the ALJ considered each of her impairments individually, he "should have considered them all in combination, particularly the non-exertional limitations such as pain, fatigue, and depression, and the effect that these would have on her ability to work." *Id.* at 10.

A. Pain Standard.

Plaintiff contends that her most "devastating" impairments are those that are non-exertional, i.e., vascular headaches, Meniere's disease, allergic reactions, depression, dizziness, gastrointestinal problems, and fatigue. (Doc. 7 at 11.) With respect to these impairments, Plaintiff claims the ALJ failed to consider them under the established three-part pain standard. *Id.* at 11-12.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain

standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have

to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that Ms. Nesmith met the first prong of the Eleventh Circuit's pain standard, but he did not believe that the evidence confirmed the severity of the alleged pain arising from those conditions or that the underlying medical condition could reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff. (Tr. at 31.) Specifically, the ALJ found that "claimant's statements concerning her impairments and their impact on her ability to work are not fully credible in light of the reports of examining and treating practitioners, the findings made on examination and the claimant's own testimony and statements." *Id.* at 27.

Plaintiff claimed the ALJ did not properly consider her allegations of "pain." (Doc. 7 at 10). While Plaintiff was not specific as to what type of pain the ALJ failed to consider, it appears the Plaintiff is referring to her vascular headaches and allergic reactions. *Id.* at 11.

With respect to her complaints of chronic headaches, the ALJ considered the findings of several of Plaintiff's physicians. Drs. Dowling and Wilcox each reported complaints of headaches, however, the ALJ noted that they attributed them to either sinus pressure or allergic reactions, and treated Plaintiff with medications. (Tr. at 29.) While Dr. Bonner and Dr. Brockington diagnosed Plaintiff with vascular headaches, or "headaches with vascular features," the ALJ made note of Dr. Brockington's assessment that she had only "mild-to-moderate discomfort," and the fact that he treated her "conservatively with prescription medication." *Id.* at 29-30. Plaintiff made no mention of chronic headaches to Drs. Grubbe, Bromberg, or Trimm. *Id.* In considering all of the medical opinions of record, the ALJ found Plaintiff's allegations of chronic headaches were not fully credible. *Id.* at 30.

Plaintiff also claimed the ALJ did not consider her various allergic reactions within the three-part pain standard. The ALJ recognized that claimant has been diagnosed with angioedema and allergic reactions, and "has experienced periodic throat and neck tightness and swelling, tongue swelling, breathing problems, periodic chest tightness, some wheezing, ear

pain, mouth ulcers, and urticaria," which have required hospital and emergency room treatments. (Tr. at 30.) However, the ALJ also noted that her allergies are "well controlled" by prescription medications, steroid injections, and dietary restrictions. *Id.* Both Drs. Grubbe and Wilcox found claimants systems to be normal, with the exception of "periodic episodes of angioedema which were brought on by allergic reactions to food or environmental allergens." *Id.* Dr. Wilcox further noted that business and family stress may also attribute to the episodes of angioedema. *Id.* The ALJ particularly relied on the opinion of Dr. Bonner as to claimant's angioedema and allergies. While Dr. Bonner diagnosed Plaintiff with chronic idiopathic angioedema, he also reported that her angioedema continued to improve from December 2002 through April 2004; she responded well to her medications; "her allergic episodes occurred farther apart as she maintained her medicine regimen and complied with her environmental and dietary restrictions;" and, as of April 2004, she "maintained a well-controlled idiopathic angioedema and stable reactive airways disease." *Id.* at 30-31.

Thus, again, the ALJ found Plaintiff's allegations of pain related to her allergic reactions were not fully credible. *Id.* at 31.[2]

In addition to her complaints of pain, Claimant also alleged the ALJ failed to consider her complaints of fatigue and gastrointestinal problems. (Doc. 7 at 10-11.) The ALJ specifically referenced Dr. Dowling's treatment of Plaintiff between February 1983 and May 2002. (Tr. at 28.) At no time, during Dr. Dowling's nineteen years of treatment, did Plaintiff complain of problems with diverticulosis, fatigue or bleeding ulcers to him. *Id.* Further,

---

[2]Although Plaintiff did not specifically refer to pain arising from problems with her left leg stump and back problems, the ALJ gave substantial consideration to these allegations of pain as well. (Tr. at 27.) However, as the ALJ noted, Plaintiff never complained of these problems to her treating physicians. *Id.* Plaintiff was seen by the following physicians, none of which reported complaints of the above-mentioned problems: Dr. Thomas F. Dowling, between February 1983 and May 2002; Dr. Dallas C. Wilcox, between December 1995 and July 2002; Dr. Robert E. Grubbe, between April 2001 and June 2002; Drs. Rodney M. Snow and Andrew Dewitt, between December 1997 and April 2002; Dr. James R. Bonner, between December 2002 and April 2004; and Dr. John C. Brockington on February 18, 2004. *Id.*

The ALJ did note that Plaintiff made a "very few" number of complaints of discomfort to Dr. Edward Bromberg, who treated Plaintiff between May 1994 and March 2001. *Id.* He also noted complaints of stump irritation and back problems to Dr. James Trimm in October 2002. However, Dr. Trimm reported no hospitalizations for stump problems since the amputation, and that Plaintiff had a "well-healed amputation with normal stump." *Id.* at 28. Dr. Trimm also found that while Plaintiff did have some problems getting on and off the examination table and some problem traversing the doorway, she "walked from the parking lot, had no complications walking through the hall into the examination room, had normal gait, and did not use any crutches, wheelchair, or walker at that time." *Id.* at 22, 28.

the ALJ noted that, between December 1995 and November 2003, Plaintiff complained of abdominal problems to Dr. Wilcox only three times. *Id.* One occasion revealed an esphogeal stricture and gastric ulcer; the second revealed gastritis and an esophageal stricture; and, the third revealed gastroenteritis. However, Dr. Wilcox "found her overall systems normal except for her respiratory infections and angioedema," and "conservatively treated the claimant with prescription medications and diet changes. There were no complaints of bleeding ulcers in Dr. Wilcox's records." *Id.*

The ALJ also noted the findings of several other physicians with regard to her fatigue and gastrointestinal problems. Dr. Grubbe's findings showed claimant's systems were continuously normal, with no complaints of diverticulosis, fatigue, and/or bleeding ulcers. (Tr. at 28.) Both Drs. Snow and Dewitt diagnosed Plaintiff with irritable bowel syndrome, however, neither of their records show treatment for fatigue or bleeding ulcers. *Id.* Further, Dr. Trimm diagnosed Plaintiff with diverticulosis, and noted her complaints of cramping abdominal pain and intermittent bleeding, but he found no disabling symptoms. *Id.* Finally, the ALJ noted that Plaintiff made no complaints of diverticulosis, bleeding ulcers, or fatigue to Drs. Bonner or

Brockington. *Id.* Thus, in consideration of all of the above medical opinions, the ALJ found Plaintiff's complaints of gastrointestinal problems and fatigue were not fully credible. *Id.*

Finally, Plaintiff alleges the ALJ failed to consider her complaints of depression. (Doc. 7 at 10-11.) However, the ALJ found that none of Plaintiff's treating physicians ever found depression to be a disabling limitation, nor did they ever restrict her from working due to depression. *Id.* Although Drs. Snow and Bonner both treated Plaintiff for depression and anxiety, the ALJ noted that both doctors found her condition to be "mild and generally well controlled by her Zoloft medication." (Tr. at 31.) Additionally, Dr. Snow reported Plaintiff was "under considerable stress due to her involvement and work activities," and Dr. Bonner reported her depression and anxiety "generally occurred with her menstrual period." *Id.* The ALJ noted that Plaintiff was never restricted from work (by any of her physicians) because of depression, nor did she ever receive psychiatric treatment or counseling. *Id.* The ALJ concluded by finding Plaintiff's depression to be a "mild limitation in her activities of daily living, in her

ability to maintain social functioning, and in her ability to maintain concentration, persistence or pace." *Id.*

It appears to the Court that the ALJ specifically addressed Plaintiff's allegations of pain in his opinion, and he provided explicit and reasonable reasons for rejecting her testimony. The objective medical evidence and other evidence supports the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations.

B. Combined Effect of Impairments

Plaintiff further contends that the ALJ failed to consider her impairments, "particularly the non-exertional limitations such as pain, fatigue, and depression," in combination. (Doc. 7 at 10.) Social Security regulations require the ALJ to consider the combined effects of all impairments in evaluating disability:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined effect of the impairments will be considered throughout the disability determination process. If we do not

> find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523; *see also Swindel v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). When there is a combination of impairments, the claimant may be found disabled even though none of the individual impairments, including pain, is disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

As discussed above, the ALJ thoroughly considered each of Plaintiff's complaints, along with the medical evidence. In doing so, Plaintiff's complaints of depression were the only complaints which he found to have a "mild limitation" on Plaintiff's daily activities. (Tr. at 31.) As for the rest of Plaintiff's complaints, the ALJ found that they were not fully credible. *Id.* at 17-33. The ALJ determined that Plaintiff retained the RFC to perform sedentary work with some limitations.[3] *Id.* at 33. While the ALJ found that Plaintiff had impairments which are considered "severe", he determined that these impairments did not prevent Ms. Jordan from performing the exertional demands of sedentary work. *Id.* at 33.

---

[3] *See supra* p.5 for the ALJ's full RFC finding.

The record reveals that the ALJ properly considered all of Plaintiff's impairments, in combination, in assessing her functional capacity and his determination is supported by substantial evidence.

IV. Conclusion.

Upon review of the administrative record, and considering all of Ms. Nesmith's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 10th day of September 2008.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671